UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GEBBIA,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No.  1:16-cv-802

HON. PAUL L. MALONEY

## **OPINION**

    This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

## **STANDARD OF REVIEW**

    The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-four years of age as of the most recent ALJ decision. (PageID.441, 1172.) Plaintiff completed his formal education after the eleventh grade and was previously employed as a dishwasher / kitchen helper and as a commercial truck driver. (PageID.401, 774–775, 939.). In his various communications with the Social Security Administration, he has alleged disability due to high blood pressure, chronic bronchitis, bipolar disorder, manic and severe

depression, emphysema, lower back pain, occasional right hand cramps, and high cholesterol. (PageID.396, 446.)

This case has a lengthy procedural history. Plaintiff first applied for benefits on November 7, 2008, alleging disability beginning April 15, 2007. (PageID.198, 341–352.) Plaintiff's applications were denied on March 11, 2009, after which time he requested a hearing before an ALJ. (PageID.198, 219–229.) After conducting an administrative hearing, ALJ Toni White-Bogan issued a decision, dated August 27, 2010, that concluded Plaintiff was not disabled. (PageID.195–212.)

After that, Plaintiff proceeded in two directions. First, he sought review of the ALJ's denial before the Appeals Council. Second, he filed a second application for benefits on June 1, 2011, which was denied on initial review on September 20, 2011. (PageID.961.) On February 17, 2012, the Appeals Council reversed and remanded ALJ White-Bogan's decision. (PageID.213–217.) On remand, ALJ Romona Scales conducted a hearing on October 30, 2012. (PageID.102–145.) In her December 28, 2012, written decision ALJ Scales noted that pursuant to the Appeals Council's February 17, 2012 reversal order, Plaintiff's June 1, 2011 application for benefits was duplicitous. Accordingly she indicated she would consider it together with Plaintiff's original application. (PageID.82–83.) Ultimately, however, ALJ Scales found that Plaintiff was not disabled. (PageID.79–100.) The Appeals Council denied Plaintiff's request for review of that second decision on April 4, 2014. (PageID.41–46.)

Plaintiff again proceeded down two paths. First, he filed a third application for benefits on April 26, 2014, alleging disability beginning December 29, 2012, the date after ALJ Scales' decision. (PageID.961.) Second, he filed a request for judicial review of his earlier applications on July 8, 2014. *See Gebbia v. Comm'r of Soc. Sec.*, No. 1:14-cv-732 (W.D. Mich)

3

(ECF No. 1). Plaintiff's federal case was remanded pursuant to a joint motion by the parties on December 19, 2014. *See Gebbia v. Comm'r of Soc. Sec.*, No. 1:14-cv-732 (W.D. Mich) (ECF Nos. 17–19.) On remand, the Appeals Council sent the case back to ALJ Scales with further directions on March 9, 2015. (PageID.959–963.) The Appeal's Council further noted that Plaintiff's April 26, 2014, applications resulted in a determination that Plaintiff became disabled on December 29, 2012, under the Medical-Vocational Guidelines. (PageiD.961.) Thus the council directed the ALJ to consider the period between Plaintiff's original onset date of April 15, 2007, and December 28, 2012, the day before the date he was found disabled. (PageID.962.)

On remand, ALJ Scales held a second hearing on October 14, 2015, at which time Plaintiff, a medical expert, and a vocational expert, all testified. (PageID.763–833.) On February 26, 2016, the ALJ issued an unfavorable written decision that concluded Plaintiff was not disabled during the relevant time period. (PageID.1172–1199.) Plaintiff did not timely file written objections to the Appeals Council. Under the regulations for cases remanded by federal courts, the ALJ's decision therefore became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(a), (d), 416.1484(a), (d). Thereafter, Plaintiff timely initiated this action under 42 U.S.C. § 405(g)

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c) 416.920(c));

4

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

In her February 26, 2016, decision, ALJ Scales determined Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between the relevant time period of April 15, 2007, and December 28, 2012. (PageID.1177.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of an affective and anxiety disorder as well as from chronic obstructive pulmonary disease (COPD). (PageID.1178.) At step three, the ALJ found that during the relevant time period, Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.1179–1181.) At step four, the

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

ALJ determined that during the relevant time period, Plaintiff retained the RFC based on all the impairments:

> to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to 4 hours in an 8 hour work period, and sit for up to 6 hours in an 8 hour work period. The claimant was further limited to frequent balancing, occasional crouching, crawling, stooping, kneeling and/or the climb or ramps and stairs. However, he could not have climbed ladders, ropes, or scaffolds. The claimant was limited to occasional overhead reach, and he would have had to avoid concentrated exposure to extreme temperature , humidity, dusts, fumes, odors, gases and areas of poor ventilation. The claimant could understand, remember, and carryout simple, unskilled tasks. The claimant could have maintained adequate attention and concentration for such tasks. The claimant was able to interact appropriately on an ongoing but brief/superficial basis with supervisors and co-workers; however, the claimant was precluded from work that required contact with the general public. The claimant would have worked best independently of others or in small groups of 3-4 people. The work could have required no fast-paced production or hourly quotas, but the claimant could have managed changes in routine work setting.

(PageID.1182.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.1189.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work in the following representative jobs: marker (131,0000 national positions), router (52,000 national positions), and machine tender (20,000 national jobs). (PageID.813–819.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.1190–1191.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from April 15, 2007, through December 28, 2012. (PageID.1191.)

**DISCUSSION**

Plaintiff, represented by counsel, has failed to comply with the Court's October 12, 2016, notice directing the filing of briefs. That notice required that Plaintiff's "initial brief . . . must contain a Statement of Errors, setting forth in a separately number section, each *specific* error of fact or law upon which Plaintiff seeks reversal or remand." (PageID.1159) (emphasis added). Plaintiff has provided only a vague statement that is accompanied by equally vague argumentation later in his brief. The Court therefore must frame the issues for review and will address those issues it gleans from Plaintiff's brief. Plaintiff's counsel is cautioned that future briefs failing to list specific errors may be stricken.

1.     **The ALJ's Evaluation of the Opinion Evidence**

In his first claimed error, Plaintiff alleges that the ALJ failed to properly weigh the opinion evidence in the record. Though Plaintiff tangentially discusses several opinions, the Court finds that Plaintiff has raised only one objection: the ALJ erred in giving great weight to the opinion of the medical expert, Dr. Michael Rabin, Ph.D., the expert who testified at the hearing and expressed limitations consistent with those adopted by the ALJ.[2]

An ALJ may rely on a medical advisor's testimony (such as that of Dr. Rabin) over an opinion of an examining or treating doctor (like Dr. Ferrari) so long as the medical advisors have

---

[2] The Court finds that arguments regarding any other medical opinion have been waived. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); *accord Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) ("[P]laintiff develops no argument to support a remand, and thus the request is waived."). This situation also demonstrates the prudence of raising specific arguments within a brief's Statement of Errors.

access to the Plaintiff's entire medical record, heard the Plaintiff's testimony at the hearing, and is a specialist. *See, e.g.*, *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Here, the ALJ did not err in relying on Dr. Rabin's opinion and testimony because Dr. Rabin had access to Plaintiff's entire medical record, was able to hear and observe Plaintiff's testimony during the October 2015 hearing, and was a clinical psychologist. In fact, in her decision, the ALJ noted these precise factors as being reasons for affording Dr. Rabin's opinion great weight:

> Dr. Rabin based the aforementioned opinion on a thorough review of the claimant's record, as it existed at the time of the review, as well as the testimony elicited at the hearing. As such, the undersigned finds that the expert had particular and detailed knowledge of the facts in this case as well as the standards set forth in the disability laws and Regulations. Moreover, since there has been no new and material evidence regarding the period at issue to contradict his opinion, the undersigned concludes that it remained appropriate. Based upon this information, the undersigned afforded great weight to the medical expert's opinion.

(PageID.1179.) Based on this information, it is clear that the ALJ did not err in relying on Dr. Rabin's opinion over Dr. Ferrari's opinion, even though the latter was a treating physician.

This is so because the ALJ concluded that Dr. Ferrari's various opinions were not entitled to controlling weight, and Plaintiff does not meaningfully challenge this determination. The issue thus before the ALJ involved weighing the opinion of a treating physician, Dr. Ferrari, with the opinion of a non-examining ME, Dr. Rabin. "It is the Commissioner's function to resolve conflicts in the medical evidence." *Craft v. Comm'r of Soc. Sec.*, 39 F. App'x 274, 276 (6th Cir. 2002).

Once the ALJ determined Dr. Ferrari's opinion was not entitled to controlling weight, the ALJ was free to consider Dr. Rabin's opinion and determine what weight, if any, it should be given using the factors found at 20 C.F.R. §§ 404.1527©), 416.927©). *See also Brooks v. Comm'r*

*of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). It is patent the ALJ clearly recognized her obligation to weigh the medical opinions under this regulation. (PageID.1182.) A non-examining medical expert's opinion "based upon the objective evidence of medical reports made by the claimant's treating physicians and testimony given by the claimant himself" which is consistent with the evidence of record can constitute substantial evidence to support an ALJ's decision. *See Atterberry v. Sec'y of Health & Soc. Servs.*, 871 F.2d 567, 570 (6th Cir. 1989).

Here, the ALJ found the expert's opinion that Plaintiff was capable of performing a limited range of light work was persuasive because it was consistent with the record as a whole. (PageID.1179.) The Court finds no error in the ALJ's analysis and none of Plaintiff's arguments to the contrary are persuasive. To the contrary the opinion is entirely consistent with the record evidence, including the relatively benign treatment notes of Dr. Ferrari. While on some occasions Plaintiff reported worsening depression and anxiety (generally due to an inability to afford his medications) Dr. Ferrari generally found Plaintiff to be alert, fully oriented, and in no acute distress. (PageID.490–491, 488, 573, 638, 640, 677, 717.) Similarly, physical examinations revealed that, although Plaintiff continued to smoke, he had a normal respiratory effort with no wheezing or rales, and Plaintiff reported his medications helped his breathing. (PageID.569, 640, 718.)

For all the above reasons, the Court finds the ALJ's decision to assign great weight to the medical examiner's opinion is supported by substantial evidence.

**2.    Plaintiff's Credibility**

At the administrative hearing, Plaintiff alleged that he was impaired to an extent far

greater than as ultimately found by ALJ Scales. As the ALJ described it, Plaintiff alleged that:

> [H]e was unable to perform work activity because of the impact his severe impairments had on his functional ability (Exhibits 2E, 7E). The claimant alleged that he was limited by severe anxiety, dizziness and/or shortness of breath, mood abnormalities, sleep abnormalities, a tendency to socially isolate, low back pain, right upper extremity cramping, and blood pressure/cholesterol abnormalities (Id.) At the hearing, the claimant reiterated his claims, also alleging that he was limited in his ability to drive, that he experienced ongoing severe anxiousness spending up to 21 days a month in his room (Hearing Testimony). He reported severe activities of daily living limitations, mood abnormalities, and a general inability to get along with others (Id.).

(PageID.1182–1183.) After summarizing Plaintiff's testimony, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (PageID.1183.) In his second claim of error, Plaintiff alleges the ALJ erred in making this finding.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can

reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ listed a multitude of reasons for doubting Plaintiff's credibility. Among them, the ALJ noted that Plaintiff often went for lengthy periods between treatment and furthermore

11

was often noncompliant in following his prescribed treatment regimen. (PageID.1183.) Plaintiff asserts that any gaps in treatment or failure to follow treatment was due to his inability to afford care, and further contends the ALJ failed to appropriately address his lack of financial resources. (PageID.1219.) The Court disagrees with Plaintiff's assertion that the ALJ failed to take Plaintiff's ability to afford treatment into account. To the contrary, the issue was squarely addressed by the ALJ when she stated that there were "no exacerbatory incidents that required emergency room care, nor had the claimant sought out low cost or sliding scale care." (PageID.1183.) That Plaintiff refused to take advantage of these opportunities, yet continued to purchase cigarettes, is an appropriate consideration when assessing Plaintiff's credibility. *See, e.g.*, *Trenholme v. Colvin*, 2014 WL 172143 at *22–23 (M.D.Tenn., Jan.15, 2014) (claimant's testimony properly rejected where "[a]lthough the claimant frequently stated he could not afford his medication, he was able to purchase cigarettes and pay for a cell phone"); *Moore v. Colvin*, 2013 WL 5873298 at *3 (E.D. Ky., Oct. 30, 2013) (same); *Ceasar v. Comm'r of Soc. Sec.*, 2013 WL 5177143 at *3 (S.D. Ohio, Sept. 13, 2013) (same). This argument is therefore rejected.

   The ALJ also found Plaintiff's testimony to be inconsistent with his ability to drive seventy miles to the hearing without experiencing significant psychological deterioration, as well as with an ability to manage benefits in his own interests. Again, these were appropriate considerations. It was Plaintiff's own doctor who stated Plaintiff could manage his own benefits. (PageID.751.) Courts in this circuit have found an ALJ's observation of the inherent inconsistency between offering extreme mental limitations and yet still finding a claimant can manage benefits in his or her own interest to constitute a good reason for assigning an opinion less than controlling weight. *See, e.g.*, *Perryman v. Colvin*, No. 3:15-00604, 2016 WL 4993384 at *3 (M.D. Tenn. Sept. 19, 2016), *report*

*and recommendation adopted sub nom,* 2017 WL 119544 (M.D. Tenn. Jan. 11, 2017); *French v. Comm'r of Soc. Sec.*, No. 15-12687, 2016 WL 3951419 at *10 (E.D. Mich. June 30, 2016), *report and recommendation adopted*, 2016 WL 3924111 (E.D. Mich. July 21, 2016).

Next, Plaintiff alleges that the ALJ's reference to Plaintiff's past convictions for fraudulent check drafting constituted an impermissible character attack. The Court disagrees. It is well accepted that an ALJ may, when assessing a claimant's credibility, take into consideration the claimant's criminal history, especially when such involves crimes involving theft and/or dishonesty. *See, e.g.*, *Adams v. Comm'r of Soc. Sec.*, 2011 WL 2650688 at *1 (W.D. Mich., July 6, 2011); *Karout v. Astrue*, 2013 WL 1946222 at *5 (D. Or., May 6, 2013); *Yousif v. Astrue*, No. 8:12-CV-00124-T-23, 2013 WL 764859, at *9 (M.D. Fla. Jan. 28, 2013), *report and recommendation adopted*, No. 8:12-CV-124-T-23MAP, 2013 WL 764705 (M.D. Fla. Feb. 28, 2013).

Finally, the ALJ also properly based the credibility evaluation on Plaintiff's daily activities. Plaintiff argues that these minimal activities are an insufficient basis for discrediting his allegations. However, the ALJ properly considered Plaintiff's daily activities as one of several factors in determining his credibility. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013). Although Plaintiff's level of daily activity was not extensive, it did contradict his claims of disabling pain and other symptoms.

For all the above reasons, the ALJ's credibility analysis is supported by substantial evidence.

### 3. VE Testimony

As previously noted, the ALJ questioned a vocational expert at the administrative hearing to determine whether there existed a significant number of jobs which Plaintiff could

perform consistent with her RFC.  In responding to the ALJ's hypothetical questions, the vocational expert, relying on the Dictionary of Occupational Titles (DOT), identified several jobs which Plaintiff would be able to perform. (PageID.813–819).  However, in estimating the number of such jobs which existed, the vocational expert relied on a variety of sources other than the DOT. (PageID.827.)

Plaintiff contends that because the DOT does not contain job numbers, the VE was required to produce "on demand" the evidence relied upon to produce those numbers. (PageID.1222.)  Many of these sources, as the ALJ noted, appear to be publically available. (PageID.827, 1190.)  But in any event, the "line of reasoning suggested by plaintiff is not widely followed in other circuits." *Offield v. Colvin*, No. 14-1060-CV-W-REL-SSA, 2016 WL 223716, at *15 n. 13 (W.D. Mo. Jan. 19, 2016).

The Fourth Circuit's decision in *Guiton v. Colvin*, 546 Fed. Appx. 137 (4th Cir., Nov. 7, 2013), is both instructive and persuasive.  In that case, the court faced the same issue advanced by Plaintiff, a vocational expert relied on the DOT to identify jobs which a claimant could perform consistent with his RFC, but relied on a different, more inclusive, source to estimate the number of such jobs which existed.  *Id.* at 140-43.  As the court recognized, "there is apparently no data, updated on a regular basis, available through either a public or private source, that reports numbers of jobs by DOT code number." *Id.* at 142.  As the court further recognized:

> if we required a VE to produce job statistics specific to the DOT-coded occupations a claimant can perform, it is unlikely that the Commissioner would *ever* succeed in satisfying her burden.  This cannot be the result the regulations intend.  Indeed, that the data Guiton requests does not exist "is a sign that [Guiton] expects too much," and like the Seventh Circuit, we decline to "impose impossible burdens on the VE."

> In this case, the VE cited the existence of 26,330 jobs in North Carolina and 825,000 jobs in the United States that Guiton could perform. Even assuming these numbers were overinclusive, far smaller figures would still suffice to satisfy the Commissioner's burden. We hold that the job numbers the VE provided, although perhaps somewhat imprecise, were sufficiently reliable to support the ALJ's conclusion.

*Id.* at 142-43 (internal citations omitted).

The Court first notes that while Plaintiff, by way of the vocational expert's testimony, has established that the DOT codes does not contain specific jobs numbers and that instead VE's rely on a variety of sources, Plaintiff has presented no evidence that there exists a relevant or appreciable difference in the number of jobs which exist under the DOT and the sources the VE relied on. Moreover, even if the Court assumes an appreciable dissymmetry, Plaintiff still falls short. As noted above, the vocational expert testified in this matter that there existed approximately 183,000 in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. While this estimation may be somewhat imprecise, Plaintiff has failed to demonstrate that such imprecision either calls into question the ALJ's reliance on the vocational expert's testimony or results in a less than significant number of jobs which she can perform consistent with her RFC. Thus, the Court finds no error in the fact that the vocational expert relied on the DOT to identify jobs which Plaintiff could perform and relied on other public sources to estimate how many such jobs existed.

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED.**

A separate judgment shall issue.


Dated:  July 18, 2017  /s/ Paul L. Maloney
PAUL L. MALONEY
United States District Judge